UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JAMES H. OURY, | ) | CIV. 09-5061-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER DENYING DEFENDANTS'** |
| | ) | **MOTIONS TO STRIKE** |
| RAPID CITY REGIONAL HOSPITAL, | ) | **PLAINTIFF'S EXPERTS** |
| INC., REGIONAL HEALTH NETWORK, | ) | **[DOCKET NOS. 61, 64]** |
| INC., CARDIOLOGY ASSOCIATES, | ) | |
| P.C., a/k/a The Heart Doctors, and | ) | |
| REGIONAL HEALTH PHYSICIANS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | | |

**INTRODUCTION**

This matter is before the court on plaintiff Dr. James H. Oury's

complaint alleging age discrimination, in violation of the Age Discrimination in

Employment Act of 1967, (Pub. L. 90-202), 29 U.S.C. § 621 *et seq.* (the

"ADEA"); and defamation, tortious interference with business relationships,

and abuse of peer review, in violation of South Dakota state law.  Docket No. 1.

 The court has original federal question jurisdiction over Dr. Oury's age

discrimination claim pursuant to 28 U.S.C. § 1331, and supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

On January 13, 2011, defendants Rapid City Regional Hospital, Inc.,

Regional Health Network, Inc., and Regional Health Physicians, Inc.

(collectively "Rapid City Regional Hospital"), moved the court for an order

prohibiting Dr. Oury from calling expert witnesses and introducing expert opinions.  Docket No. 61.  On January 17, 2011, defendant Cardiology Associates, P.C. ("Cardiology Associates") joined Rapid City Regional Hospital's motion to strike Dr. Oury's experts.  Docket No. 64.  The district court, the Honorable Jeffrey L. Viken, referred the defendants' respective motions to strike [Docket Nos. 61, 64] to this court for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts, insofar as they are pertinent to the defendants' motions to strike, are as follows.  The action was commenced on July 7, 2009.  Docket No. 1.  On January 20, 2010, Dr. Oury's counsel sought to withdraw from representation but had made no initial disclosures under Rule 26.  The district court's Rule 16 scheduling order had set the deadline for Rule 26 disclosures at December 1, 2009.  Docket No. 15.  The defendants did not object to counsel's motion to withdraw, but expressed concern about the plaintiff's lack of compliance with the scheduling order and Rule 26, as well as the inevitable delay that the necessity of new counsel would cause all the parties.  Docket Nos. 17, 18.  Before permitting Dr. Oury's counsel to withdraw, the district court required Dr. Oury to find substitute counsel by June 1, 2010.  Docket No. 23.

On July 6, 2010, plaintiff's current counsel made an appearance on behalf of Dr. Oury, which appearance was conditional upon counsel's request to the district court that it modify the scheduling order, in order to accommodate counsel's trial schedule.  Docket No. 25.  On July 26, 2010, the district court substituted plaintiff's former counsel with his current counsel, Gregory Yates and Michael Shubeck.  Docket No. 32.  On the same date, the district court issued a revised scheduling order.  Docket No. 33.  Under the new scheduling order, Dr. Oury was to disclose the identity of his retained experts and reports from those experts, in accordance with Rule 26(a)(2), by December 1, 2010.  Id.

All parties to the action were joined on September 14, 2010.  Docket No. 35.[1]  On October 7, 2010, Dr. Oury issued amended notices of depositions and demands for production of documents.[2]  See Docket Nos. 47-49.  The

---

[1]Dr. Oury's unopposed motion to join additional parties and amend the complaint requested the addition of Regional Health Network, Inc., and Regional Health Physicians, Inc., pursuant to Rules 15, 19, and/or 20.  Docket No. 34.  The district court granted the motion to join parties and amend the complaint.  Docket No. 35.

[2] Dr. Oury's demand for production of documents requested (1) any and all documents that would reflect, relate to, or otherwise indicate discussions, statements, or communications relating to or made by Plaintiff, James Oury; (2) any and all documents and/or reports relating to the focus review of 23 cases selected as representative of surgical performance by Plaintiff, James Oury; and (3) any and all documents or reviews, whether peer reviews or other compilations or statistical analyses, relating to cases involving Plaintiff, James Oury's surgical performances.  Docket Nos. 47-49.

3

defendants objected to the discovery requests and did not provide answers, because the requests did not comply with Rule 34.[3]  Docket Nos. 52-54. Dr. Oury's counsel revised the requests and served them as requests for production on October 28, 2010.  Docket No. 68, Affidavit of Michael Shubeck ("Aff. of M. Shubeck"), ¶3; Docket No. 68-2, Plaintiff's Requests for Production (First Set).  The requests for production ("RFPs") made eighteen requests, including the three requests previously issued on October 7, 2010, and new requests for documents which Dr. Oury asserts are necessary to the testimony and reports of his experts.[4]

All parties had answered the amended complaint by November 10, 2010. Docket Nos. 56, 57.  On November 30, 2010, Dr. Oury designated his retained experts, Dr. Ralph Brown, Ph.D., and Dr. Lawrence Huntoon, Ph.D.  Docket No. 58.  However, Dr. Oury did not provide expert reports, as required by Rule 26(a)(2) and the district court's scheduling order.  Id.  On December 1, 2010, Dr. Oury's counsel requested that the defendants stipulate to an extension of time for disclosure of Dr. Brown's report.  Docket No. 68-9.  Dr. Oury's counsel

---

[3] Rule 34 provides that a party to whom a request to produce documents is directed has thirty days to make a written response.  Fed. R. Civ. P. 34(b)(2)(A). Dr. Oury's initial demand for production of documents requested production within twelve days.  Docket Nos. 47-49.

[4] Dr. Oury's RFPs, not reproduced here, generally requested information relating to the peer review of Dr. Oury, various employment contracts, financial information, and Dr. Oury's personnel file.  See Docket No. 68-2, Plaintiff's Requests for Production (First Set).

4

asserted that he had not received information from the defendants responsive to RFP 14, and that that information was necessary in order for Dr. Brown to complete his report.  Id.  Counsel for Cardiology Associates responded that he had no responsive information, but would agree with whatever course of action plaintiff's and defense counsel decided was appropriate.  Id.  Rapid City Regional Hospital's counsel agreed to an extension of time, but asked how much additional time was necessary.  Id.  Defense counsel apparently received no immediate response.

The defendants responded to Dr. Oury's RFPs on December 2, 2010.  See Docket No. 68-3.  Dr. Oury asserts that these responses contained the financial information he had requested, but did not contain documents pertaining to the peer review of Dr. Oury, as the parties were negotiating a protective order on this information.[5]  Docket No. 68, Aff. of M. Shubeck, ¶4.  Rapid City Regional Hospital supplemented its responses on December 15, 2010, with information responsive to Dr. Oury's requests for documents pertaining to the peer review. Docket No. 68-4.

Dr. Oury's expert economist, Dr. Brown, then advised that he required additional documentation to complete his economic loss appraisal for Dr. Oury. See Docket No. 68-6.  Dr. Oury twice attempted to personally obtain the

---

[5] Defendant Rapid City Regional Hospital filed an unopposed motion for a protective order on December 6, 2010.  Docket No. 59.  The district court signed the protective order on December 7, 2010.  Docket No. 60.

necessary documentation through the Rapid City Regional Hospital financial department.  Docket No. 68, Aff. of M. Shubeck, ¶8; Docket No. 68-7.  Dr. Oury also attempted to obtain financial documentation from his personal accountant, but the accountant expressed concerns that he would be required to testify adversely to Rapid City Regional Hospital.  Docket No. 68, Aff. of M. Shubeck, ¶9.  After some clarification about his role in gathering the information, the accountant agreed to compile the requested financial records. Id.

On December 16, 2010, defense counsel inquired again as to the date Dr. Oury's expert report by Dr. Brown would be disclosed.  See Docket No. 68-10.  On December 20, 2010, Dr. Oury represented that he would stipulate to an extension of time for defendants' expert disclosure deadline, given that Dr. Oury's expert reports had still not been disclosed to the defendants.  Id. Dr. Oury stated that the delay resulted from his inability to obtain certain documents, as well as the lateness of defendants' discovery responses, which were dated December 2, 2010, and December 15, 2010.  Id.  Dr. Oury informed defendants that his economist, Dr. Brown, had still not yet completed his report, and that his peer review expert, Dr. Huntoon, would not disclose his report until the close of factual discovery.[6]  Dr. Oury explained that the reason

_____

[6] On December 20, 2010, the district court's deadline for factual discovery was set for June 1, 2011.  Docket No. 33.  However, as the court has already noted, expert reports were to be disclosed by Dr. Oury on December 1, 2010, and

for non-disclosure of Dr. Huntoon's report was because Dr. Huntoon would be "commenting on the facts of the case, including the depositions of witnesses," which had not yet been taken.  Id.

On January 13, 2011, having received none of Dr. Oury's expert reports nor any deadline by which it might expect the reports, defendant Rapid City Regional Hospital filed its motion to strike Dr. Oury's experts and expert reports.  Docket No. 61.  The defendant cited Dr. Oury's failure to comply with Rule 26 and the district court's scheduling order, and suggested that an appropriate sanction for the noncompliance is exclusion of Dr. Oury's experts and their reports.  Docket No. 62.  On January 17, 2011, Cardiology Associates joined in Rapid City Regional Hospital's motion to strike, citing the same reasons and suggesting the same sanction.  Docket Nos. 64, 65.

Dr. Oury resists the motions to strike, on grounds that the non-disclosure of expert reports was not in bad faith and was substantially justified; and because the defendants have not been prejudiced by the non-disclosure.  Docket No. 67.  The court now turns to the parties' respective arguments in favor of, and opposing, the defendants' motions to strike.

---

by the defendants on February 1, 2011.

**DISCUSSION**

**A.     Pretrial Disclosure of Experts Pursuant to Federal Rule 26**

Rule 26(a)(2) requires parties to make pretrial disclosure, without a formal discovery request, of the identity of any person who may provide expert testimony at trial.  If the expert witness is one "retained or specially employed to provide expert testimony," the witness must also prepare a signed, written report containing:

1.     a complete statement of all opinions the witness will express and the basis and reasons for them;

2.     the facts or data considered by the witness in forming them;

3.     any exhibits that will be used to summarize or support them;

4.     the witness's qualifications, including a list of all publications authored in the previous 10 years;

5.     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

6.     a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  The expert's report is to be disclosed at the same time the expert's identity is made known to the opposing party.  Id.

Failure to disclose an expert witness as required by Rule 26(a)(2)(B) may result in exclusion of the witness and his reports unless the failure to disclose was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); see Fu v. Owens, 622 F.3d 880, 883-84 (8th Cir. 2010).  Rule 37 does not provide for

8

mandatory sanctions.  Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004).

"When fashioning a remedy, the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."  Wegener v. Johnsons, 527 F.3d 687, 692 (8th Cir. 2008) (citing Sellers v. Mineta, 350 F.3d 706, 711-12 (8th Cir. 2003), and Marti v. City of Maplewood, 57 F.3d 680, 683 (8th Cir. 1995)).  With the foregoing guidelines in mind, the court now considers whether the circumstances in this case justify exclusion of Dr. Oury's experts and their reports.

**B.      Exclusion Is Not An Appropriate Remedy**

**1.      Bad Faith**

There is no question that Dr. Oury's expert reports are late.  The district court's most recent scheduling order set the date for disclosure of experts and their reports at December 1, 2010.  Docket No. 33.  A review of the docket indicates that Dr. Oury planned to disclose Dr. Brown's complete report by March 1, 2011.  See Docket No. 69.  As of the date of this order, Dr. Huntoon's report has not been disclosed.  The defendants concede that the generally-utilized remedy for untimely expert disclosure is for the district court to simply grant an extension of time and adjust the remaining dates on the scheduling

order.  See Docket No. 62.   However, the defendants cite to "a series of false starts" in this case and urge the court to adopt exclusion as a "default remedy" under Rule 37(c)(1).  See Docket No. 52, at 5.

The court concurs that there have been a number of time extensions granted in this case, but those occurrences appear to have resulted in large part from Dr. Oury's difficulty in obtaining substitute counsel after his original attorney of record asked to withdraw from the case.  Docket No. 70, Affidavit of Dr. James Oury ("Aff. of Dr. Oury"), ¶ 3; Docket No. 67, at 1-2.  In addition, the parties resolved at least one discovery dispute after the deadline for Dr. Oury's expert disclosures, which appears to have further delayed the ability of Dr. Oury's experts to prepare their reports.  Docket No. 67, at 2-4.  The court notes that Dr. Oury has failed to comply with the deadline for disclosure of experts on but a single occasion.

Significantly, however, Dr. Oury did substantially comply with Rule 26 and with the scheduling order in a timely fashion.  See Docket No. 58.  His designation of expert witnesses, filed November 30, 2010, identified his experts by name, explained that their reports would be forthcoming, and detailed the expected contents of each expert's report.  With respect to Dr. Huntoon, Dr. Oury stated:

> Dr. Huntoon will testify regarding the appropriateness of the peer review process applied to Dr. Oury in this case. Dr. Huntoon's report will be based upon the full extent of discovery produced in this case including correspondence and depositions and, therefore, will be

10

produced at the close of factual discovery. Dr. Huntoon's opinions will also be based upon his training, experience and research in the subject of hospital peer review.

The opinion of Dr. Huntoon will be based upon his expertise, education, background and experience, and his review of relevant records, correspondence, deposition testimony, the hospital bylaws, and the hospital policy statements.

Docket No. 58.  Dr. Oury indicated that Dr. Brown's completed report would be provided to the defendants as soon as the necessary discovery was obtained and reviewed by Dr. Brown.[7]  Id.  Dr. Oury provided each expert's complete curriculum vitae and each expert's fee schedule.  Docket Nos. 58-1, 58-2, 58-3, 58-4.  He also provided a detailed list of previous trial testimony by both experts.  Docket Nos. 58-1, 58-5.

Dr. Oury cites Eighth Circuit case law which provides that "the 'use of an undisclosed witness should seldom be barred unless bad faith is involved.'" Docket No. 67, at 8 (quoting Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993) (internal citations omitted)).  The defendants make no assertions that Dr. Oury or his counsel have acted in bad faith in only partially complying with Rule 26 and the scheduling order, or by requesting extensions of time

---

[7] Dr. Brown's preliminary report apparently was disclosed to the defendants, with the notation that "Calculation of the losses is not provided in this report at this time to due to lack of key data on his earnings since his termination and fringe benefits at RCRH. When this information become available this report will completed."  Dr. Brown's preliminary report is dated November 30, 2010, but it is unclear whether it was actually disclosed to the defendants on that date.  See Docket No. 68-6, at 4.

throughout the case.  Instead, the defendants suggest that Dr. Oury's "failure to disclose in a timely manner is equivalent to failure to disclose."  Docket No. 62, at 5 (quoting Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) (internal citation omitted)).

Trost was a products-liability case in which the plaintiff failed to even begin seeking an expert report until after the defendant had submitted its own expert report.  Trost, 162 F.3d at 1007.  The plaintiff finally submitted his first expert disclosures forty-two days after the deadline for expert discovery, and attempted to present a supplement to his expert's affidavit sixty days after the deadline for expert discovery, after the defendant had moved for summary judgment.  Id.  The district court refused to accept the plaintiff expert's affidavit because it was untimely, did not comply with Rule 26, and was based on insufficient expertise.  Id.  The Eighth Circuit's statement that the failure to timely disclose expert reports was "equivalent to failure to disclose" was made in the context of a summary judgment motion.  That is, Trost had submitted no expert evidence to support his claims prior to the time the defendant moved for summary judgment, and therefore there was no genuine issue of material fact before the court as to whether Trost's bicycle was defective.  Id. at 1008-09.  The factual circumstances present in Trost are absent here.

The court also finds instructive the Eighth Circuit's decision in Bergfeld v. Unimin Corp., 319 F.3d 350, 354-55 (8th Cir. 2003).  That case involved an

expert witness whose identity was wholly undisclosed pursuant to Rule 26 through the entire pretrial stage of the case.  The court said that even where the opposing party had no prior knowledge of an expert's identity or involvement with the case, exclusion of the expert and his affidavit at trial was not appropriate in the absence of bad faith or the sort of "sneak attack" present in other cases.  Bergfeld, 319 F.3d at 355 (quoting The Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs., Inc., 123 F.3d 1107, 1112-13 (8th Cir. 1997)).

In The Corner Pocket, the Eighth Circuit affirmed the district court's exclusion of an expert's affidavit where "the only reasonable inference supported by the evidence was that the witness was concealed until the eve of trial because his testimony would not withstand scrutiny."  The Corner Pocket, 123 F.3d at 1113 n.5.  The Bergfeld decision noted that despite the non-disclosure of the expert's identity in the defendant's pretrial disclosures, the plaintiff nonetheless "had adequate notice during discovery that [the expert] was a person likely to have discoverable information."  Bergfeld, 319 F.3d at 355.  The court declined the plaintiff's request to exclude the expert and his testimony.  Id.

Here, there is no indication that Dr. Huntoon's testimony will not withstand scrutiny.  His curriculum vitae and previous trial testimony are extensive, and Dr. Oury has indicated the precise contours of Dr. Huntoon's

13

prospective testimony.  Docket No. 58.  The same is true for Dr. Brown.

Furthermore, the incomplete disclosure of Dr. Brown's complete report was

apparently a result of the parties' negotiations for a protective order, rather

than a "sneak attack" by Dr. Oury.

Despite not having the experts' completed reports by December 1, 2010,

the defendants had timely notice of each expert's identity and the substance of

each expert's prospective testimony.  Each expert's educational background,

professional experience, publications, and trial testimony were timely provided.

On December 1, 2010, Dr. Oury's counsel requested an informal extension of

the deadline for Dr. Brown's report, although no date certain was agreed upon

by the parties.  Docket No. 68-9.  There is no indication that Dr. Oury has

engaged in bad faith or otherwise attempted to subvert the requirements of

Rule 26 or the district court's scheduling order.

### 2.      Substantial Justification

In determining whether a failure to disclose is substantially justified or

harmless, and accordingly whether the exclusion provision of Rule 37 should

apply, there are four factors a court should consider.  These considerations are

"(1) the importance of the excluded expert testimony; (2) the party's explanation

for failure to disclose; (3) the potential prejudice created by permitting use of

the expert testimony at trial or on a pending motion; and (4) the ability to cure

any prejudice by granting a continuance."  Citizens Bank v. Ford Motor Co.,

14

16 F.3d 965, 966 (8th Cir. 1994); <u>Sancom, Inc. v. Qwest Communications Corp.</u>, 683 F. Supp. 2d 1043, 1063 (D.S.D. Jan. 4, 2010); <u>Transclean Corp. v. Bridgewood Services, Inc.</u>, 101 F. Supp. 2d 788, 795 (D. Minn. 2000).

### a.  Importance of the Excluded Testimony

With respect to the first factor, the court finds that the proposed testimony by each of Dr. Oury's experts is likely to be significant to his case. The retained economist, Dr. Brown, intends to testify to Dr. Oury's loss of earnings.  <u>See</u> Docket No. 68-6.  This testimony is significant, as Dr. Oury's prayer for relief requests compensation for pecuniary losses, including but not limited to lost earnings, reimbursement for insurance premiums, and the costs to Dr. Oury of seeking new employment.  Docket No. 1, at 11-12.

Dr. Huntoon intends to testify about the "appropriateness of the peer review process applied to Dr. Oury in this case."  Docket No. 68-6.  This testimony is also crucial, as Dr. Oury claims that the peer review conducted by the defendants violated South Dakota law and directly injured Dr. Oury.  <u>See</u> Docket No. 1, at 10-11.

### b.  Dr. Oury's Explanation for Untimely Disclosure

With respect to the second factor, the court finds Dr. Oury's explanation for his failure to disclose his experts' reports is persuasive and reasonable.  He asserts that Dr. Brown's complete financial analysis was not timely disclosed

15

because Dr. Brown "identified information necessary to his opinion that was not available on the date of the expert disclosure."  Docket No. 67, at 8. Dr. Oury has indicated that because Dr. Huntoon has been designated as a fact witness, his complete report cannot be provided until the close of factual discovery and after deposition testimony has been completed.  Id. at 9.

The defendants do not specifically address whether substantial justification exists or not, but point the court to an Eighth Circuit case in which the court excluded an expert due to the expert's "cursory response to the district court's Scheduling Order. . . ."  Docket No. 62, at 6 (quoting Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 283-84 (8th Cir. 1995)). However, the court finds the facts of Sylla-Sawdon to be distinguishable from the facts in this case.

The Sylla-Sawdon case involved an appeal from a judgment entered by the district court following a jury verdict in favor of Uniroyal Goodrich Tire Company ("Uniroyal"), and from the district court's denial of the plaintiff's motion for a new trial.  Ms. Sylla-Sawdon's son was killed in an automobile accident allegedly caused when a tire manufactured by Uniroyal "blew out" while Ms. Sylla-Sawdon and her son were traveling in a passenger vehicle on a Missouri interstate.  Id. at 279.  In Sylla-Sawdon, the disclosures made by the plaintiff "lacked the specificity required by the scheduling order and thus failed to give [the defendant] advance notice of [the expert's] qualifications and the

16

substance of his testimony so that [the defendant] could prepare to meet the testimony at trial." <u>Sylla-Sawdon</u>, 47 F.3d at 284. Specifically, the plaintiff's expert submitted a conclusory affidavit regarding the substance of his proposed testimony, and a curriculum vitae. Neither document indicated "any direct professional experience in tire manufacture or tire failure analysis." <u>Id.</u> The plaintiff refused to supplement her expert's disclosures, and when the expert was deposed by the defendant, the "expert" testified that

> he did not consider himself an expert in rubber chemistry, tire design, or the tire manufacturing process. He testified that he does not have any formal training in tire failure analysis and that his employment history bears no relationship to the knowledge he relied upon to reach his opinion in this case. [He] explained that his knowledge of tire failures arises from his many years of experience as a competitive race car driver, combined with his mechanical engineering background.

<u>Sylla-Sawdon</u>, 47 F.3d at 282.

Even in the face of the inadequate expert disclosures present in that case, the Eighth Circuit explained that mere <u>limitation</u> of the expert's testimony to the statements made in his affidavit and "nothing else" was appropriate, rather than complete exclusion of the expert and his affidavit. <u>Id.</u> at 282-83.

The factual underpinnings present in <u>Sylla-Sawdon</u> are absent here. On November 30, 2010, Dr. Oury gave timely, detailed information about each of his experts, as well as about the subject and scope of each expert's proposed testimony. Dr. Brown's curriculum vitae spans twenty-two pages, and clearly demonstrates his academic achievements, professional experience,

17

publications, trial testimony, and areas of expertise.  Docket No. 58-1.

Likewise, Dr. Huntoon's curriculum vitae indicates his professional licensures,

hospital affiliations, board certifications, educational background, professional

experience, publications, and expertise in the area of "sham peer review."

Docket No. 58-3.  Thus, Dr. Oury's designation of experts on November 30,

2010, gave the defendants sufficient notice that Drs. Brown and Huntoon will

provide expert testimony, and of the substance about which each expert will

testify.

### c.      Potential Prejudice to the Defendants

The court finds the potential prejudice to the defendants by permitting

Dr. Oury's expert testimony is minimal.  Dr. Oury has indicated that

Dr. Brown's report was not completed prior to December 1, 2010, because the

parties were seeking a protective order covering the financial information which

was to be disclosed to Dr. Oury.  That information was necessary to

Dr. Brown's report, but was not disclosed to Dr. Oury until the protective order

was in place, on December 7, 2010.  Significantly, Dr. Brown did timely

produce a preliminary economic loss appraisal, which indicated that the

incomplete portion of his report would be provided to the defendants as soon as

the necessary discovery was provided to the plaintiff and Dr. Brown.  Docket

No. 68-6.  Furthermore, the defendants have possession of the financial

records about which Dr. Brown will testify, so the exact figures about which Dr. Brown will testify should come as no surprise to the defendants.

Dr. Oury has explained that Dr. Huntoon will analyze the peer review of Dr. Oury which was conducted by the defendants.  Dr. Huntoon's analysis and report will derive from information that the defendants have direct knowledge of, or can readily obtain.  The defendants have possession of all the information relating to the methods and manner in which they conducted the peer review of Dr. Oury.  The defendants also know the identity of all persons involved in conducting the peer review.  Although those persons may not have been deposed yet, the defendants can readily ascertain the substance of each witness's testimony regarding the peer review.  There is minimal prejudice to defendants by permitting Dr. Oury to use his experts' testimony at trial or in further proceedings.

### d.    The Ability to Cure Potential Prejudice

The defendants have asserted that Dr. Oury's late disclosure gives him "more time for compliance, while shrinking the time available to Defendants." Docket No. 62, at 6.  However, the court notes that Dr. Oury has moved the district court to extend the expert report disclosure deadlines.  See Docket No. 69.  Dr. Oury's pending motion to extend deadlines proposes an amended schedule, pursuant to which Dr. Brown's report would be disclosed by March 1, 2011; Dr. Huntoon's report would be disclosed by June 1, 2011, in

accordance with the close of factual discovery; the defendants would disclose their experts by July 1, 2011; and expert discovery would close by August 1, 2011. Id.

Under the proposed schedule, Dr. Brown's report should already be in the defendants' hands.  The defendants would have thirty days past the close of factual discovery to identify their experts, and another thirty days beyond that date to prepare expert reports.  The proposed schedule appears to be reasonable, but the district court can fashion a revised scheduling order if and when the court sees fit.  The possibility of one or more brief extensions of discovery deadlines is certainly not unheard of in civil litigation, and can sufficiently cure any potential prejudice to the defendants that results from Dr. Oury's late disclosure of expert reports.  Accordingly, because Dr. Oury's non-disclosure was substantially justified, and does not prejudice the defendants, the defendants' respective motions to strike Dr. Oury's experts and their reports is denied.

Despite the foregoing analysis, the court notes that Dr. Oury should have sought an extension of time from the district court when it became obvious that his experts would be unable to complete their reports on time.  Informal requests between the parties for extensions of time are rarely helpful, unless the parties are able to agree on a date certain by which discovery will be exchanged.  Likewise, formal requests to the district court for an extension of

time <u>before</u> deadlines have passed are obviously preferable to requests for an extension made after the deadlines in question have already passed.  The fact that Dr. Oury's peer review expert is a fact witness and will be testifying as to the future depositions of witnesses did not relieve Dr. Oury from his obligation to comply with the district court's scheduling order or to make a timely motion to amend the scheduling order.  However, under the present circumstances, blind adherence to the scheduling order and Rule 26 is not justified.  The court can fashion a remedy more appropriate for the circumstances.  <u>See</u> <u>Wegener</u>, 527 F.3d at 692.

Instead, Dr. Oury shall immediately disclose to the defendants the preliminary report of his peer review expert, Dr. Huntoon.  The plain language of Rule 26 requires parties to disclose their retained experts <u>and their reports</u> at the time such experts are designated. Fed. R. Civ. P. 26(a)(2)(B).  Neither Rule 26 nor Eighth Circuit case law provides a mechanism or exception by which a party may wholly avoid his obligation to disclose his experts' reports until the close of factual discovery.  <u>See, e.g.</u> <u>McGraw v. Wachovia Securities, L.L.C.</u>, 2009 WL 3233485, at *3-4 (N.D. Iowa Oct. 6, 2009) (rejecting plaintiffs' claim that failure to comply with discovery deadlines was caused by the defendants' failure to respond to discovery requests, where plaintiffs failed to inquire about the discovery until eight months after the discovery requests were served); <u>Benedict v. Zimmer, Inc.</u>, 232 F.R.D. 305, 308 (N.D. Iowa, 2005)

(rejecting plaintiffs' argument that non-disclosure of expert reports was justified because no depositions had yet taken place).  If, after the close of factual discovery, Dr. Huntoon wishes to supplement his report, Dr. Oury may move the district court for permission to amend the expert report.

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the defendant Rapid City Regional Hospital's motion to strike plaintiff's experts [Docket No. 61] is denied.  It is further

ORDERED that the defendant Cardiology Associates' motion to strike plaintiff's experts [Docket No. 64] is denied.  Finally, it is

ORDERED that the plaintiff Dr. Oury shall provide Dr. Huntoon's preliminary report to the defendants by no later than the close of business on April 8, 2011.  If Dr. Brown's report has not already been disclosed to defendants, plaintiff shall provide it to defendants also by April 8, 2011.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in

the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated March 25, 2011.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

23