UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JAMES H. OURY, | ) | CIV. 09-5061-KES |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| RAPID CITY REGIONAL HOSPITAL, | ) | AND ORDER |
| INC.; | ) | |
| CARDIOLOGY ASSOCIATES, P.C., | ) | |
| a/k/a The Heart Doctors; and | ) | |
| REGIONAL HEALTH PHYSICIANS, | ) | |
| INC., | ) | |
| | ) | |
|     Defendants. | ) | |

    Plaintiff, James H. Oury, brought this action against defendants,[1] Rapid City Regional Hospital, Inc. (Regional Hospital), Cardiology Associates, P.C., a/k/a The Heart Doctors (the Heart Doctors), and Regional Health Physicians (Regional Physicians). Dr. Oury alleges that Regional Hospital and Regional Physicians violated the Age Discrimination in Employment Act (ADEA). He also includes the supplemental state-law claims of defamation, breach of contract, tortious interference with a business relationship, and violation of South Dakota statutory peer review laws against various defendants. Docket 36.

    Regional Hospital and the Heart Doctors move for summary judgment on all claims alleged against them. Docket 112; Docket 132. Regional Physicians

---

[1] Regional Health Network, Inc., was initially named a party defendant to this action, but was dismissed with prejudice on March 6, 2012. Docket 160.

argues that Dr. Oury's ADEA claim fails against it because Dr. Oury did not report it to the EEOC in a timely manner and did not obtain a right to sue letter prior to commencing this action. Regional Hospital argues that Dr. Oury's ADEA claim fails because he cannot rebut its reason for not hiring Dr. Oury—that his medical practice was not financially profitable. Regional Physicians argues that if the court grants summary judgment on the ADEA claim, then the court should dismiss without prejudice the remaining state-law claims pursuant to 28 U.S.C. § 1376(c)(3). Docket 172 at 3. Dr. Oury does not oppose Regional Physicians' motion for summary judgment on the ADEA claim, but he denies that Regional Hospital is entitled to summary judgment on this claim.

    Regional Hospital, the Heart Doctors, and Regional Physicians move for summary judgment on all the remaining claims. Dr. Oury resists these motions and states that there are genuine issues of material fact that preclude summary judgment.

    Dr. Oury moves for partial summary judgment on the breach of contract claim. Docket 108. Regional Physicians resists that motion and also moves for summary judgment on the breach of contract claim. Docket 129.

2

**BACKGROUND**

The facts viewed in the light most favorable to Dr. Oury, the nonmoving party on defendants' motions for summary judgment, are as follows:

Dr. James Oury is a cardiac surgeon. Regional Hospital is the main healthcare provider in Rapid City, South Dakota. Regional Physicians and the Heart Doctors are medical groups that employ physicians who provide medical services to the Rapid City community through their own offices and through the physicians' staff privileges at Regional Hospital. In 2003, Dr. Oury and Regional Hospital entered into a professional services agreement, and Dr. Oury was named director of cardiac surgery, among other duties. Soon after the agreement was signed, the hospital terminated Dr. Oury's contract. Dr. Oury did not have a contract with Regional Hospital after 2004.

Dr. Oury then signed a contract to work as a cardiovascular surgeon for Regional Health Network, Inc., which was effective July 1, 2005. Regional Health Network immediately transferred all its rights to Dr. Oury's Physician Employment Agreement to Regional Physicians. Dr. Oury was 67 years old at the time. Dr. Oury's employment contract was for a three-year term that automatically renewed if neither party gave notice of termination, notice of non-renewal, or notice of intent to negotiate new terms. Section 1.2 of Dr. Oury's employment contract stated that either party had the right to terminate the agreement without cause on a 90-day written notice. Docket 111-1 at 2. If one

3

of the parties gave notice of its intent to negotiate "then the parties agree[d] to immediately enter into negotiations with respect to the contract terms and conditions for which renegotiation is requested." Docket 111-1 at 2.

In December of 2007, Regional Physicians sent a letter to Dr. Oury and its other physicians stating that it was developing a new physician compensation model and the letter was to serve as formal written notice of the change pursuant to section 1.2 of their employment agreements, which was the section that discussed termination, non-renewal, and negotiation. In November of 2008, the CEO of Regional Physicians, James Keegan, sent Dr. Oury a letter that said the new compensation model was nearing final approval, and Regional Physicians wanted to convert all physicians to the new agreements or compensation model as soon as possible with an outside date of June 1, 2009. That letter, however, also gave formal written notice of Regional Physicians' termination of its physicians' employment contracts "without cause" for those physicians whose employment agreements ended on or after June 1, 2009.

During the time period of this correspondence, it was common knowledge that Regional Physicians was no longer offering an in-house cardiology service line, was no longer going to employ cardiovascular physicians at all, and both cardiology and cardiac surgery were moving to Regional Hospital. Docket 131 at 3. Regional Physicians directed Dr. Oury to negotiate any future job opportunities with Regional Hospital. Regional Physicians offered to extend

4

Dr. Oury's contract until July 15, 2009, but Dr. Oury rejected that extension and asked that his contract expire on June 1, 2009. Docket 111-5. In the fall of 2008, Regional Hospital offered Dr. Oury an employment contract that had a compensation model based on his surgical production. Dr. Oury rejected the contract and proposed his own counter-terms in response. Regional Hospital rejected Dr. Oury's counterproposal.

One of the main issues in this case stems from Dr. Oury's peer review that occurred in 2008 and 2009. All physicians must obtain staff privileges[2] at a hospital to provide care to patients in a hospital setting. Doctors at Regional Hospital, including Dr. Oury, were subject to recredentialing or the reappointment process to maintain their privileges at the hospital. Reappointment is done to determine the competency of practitioners to provide high-quality and safe patient care. Docket 134 at 4. Per South Dakota law, doctors must be certified for reappointment at least every two years.[3] All Regional Hospital physicians over the age of 65 require reappointment to the medical staff every year. Docket 135-8 at 6; Docket 135-18 at 13.

In April of 2008, Dr. Oury was up for reappointment and submitted his reappointment application. The Medical Staff Office handles credentialing and

---

[2] Privileges are the list of things that a physician has permission to do within a hospital.

[3] S.D. Admin. R. 44:04:04:02.01. The rule provides that "[t]he medical staff must conduct appraisals of its members at least every two years."

peer review at Regional Hospital. Once an application for reappointment is submitted, the chief of staff assembles the necessary information and gives it to the applicant's department chair. Carly Elliot assembled the data for Dr. Oury's reappointment as part of her regular duties as Quality Review Coordinator.

Elliott prepared a Physician Performance Report for Dr. Oury based on criteria preset by the medical staff as she would for every surgeon up for reappointment. Docket 134 at 5-6. The performance report data forms a spreadsheet that is populated by the hospital's computer system based on delineated performance criteria. Elliott gave Dr. Oury's report to the chair of the surgery department, Justin Green. Normally, the department chair gives the Credentials Committee the physician's report and recommendation on reappointment. Then the Credentials Committee makes a recommendation on the reappointment and transmits it to the Medical Executive Committee. The Medical Executive Committee reviews the file and makes a recommendation to the Regional Hospital Board of Trustees.

In Dr. Oury's case, Dr. Green reviewed Dr. Oury's application for reappointment and recommended reappointment for three months while the Medical Staff Quality Review Committee determined if there were any quality concern issues. The Credentials Committee recommended reappointing Dr. Oury for three months and referred the case to the Medical Staff Quality Review Committee. At this stage of his review, Dr. Oury disputed some of the

data included in his report, and the Quality Review Committee was aware[4] of Dr. Oury's concerns. The Quality Review Committee reviewed the quality data and found that there could be a quality of care concern. The committee determined that a Focused Professional Practice Evaluation may be necessary and relayed these concerns to the Cardiovascular Services Quality Assurance and Quality Improvement Committee (Cardiovascular Committee). While this process was occurring, Dr. Oury had full clinical privileges that were never restricted or revoked.

The Cardiovascular Committee consisted of Dr. James Walder, Dr. K. John Heilman, Dr. Paul Orecchia, Dr. Oury, Dr. Dirk Vandergon, and Dr. Amad M. Zineldine. The Cardiovascular Committee formed a subcommittee to review Dr. Oury's cases from 2007 where complications[5] occurred. The subcommittee consisted of Dr. Walder, chair and President of the Heart Doctors, two doctors from the Heart Doctors, and a cardiologist from Regional Physicians. The cardiologist from Regional Physicians declined to participate. On August 11, 2008, the Heart Doctors withdrew from the process because of the apparent conflict of interest.

---

[4] The Medical Staff Quality Review Committee reviewed Dr. Oury's position on the data and decided that he was applying or using the quality data in a manner that was inconsistent with the standards generally applied in the peer review process. Docket 134 at 9.

[5] Examples are: organ failure, cardiac arrest, return to surgery, CVA Symptomology, etc. Docket 134 at 11.

On August 27, 2008, the cases were referred to the Greeley Company, an outside consulting group, to finish the review. After the outside review was complete, the Medical Staff Committee reviewed the Greeley Company report, ruled on 14 of 23 cases, and asked Dr. Oury to provide more information on the remaining nine cases. On March 17, 2009, the Medical Staff Committee concluded its review and recommended full reappointment.

Meanwhile, Regional Hospital had begun its search for a new cardiac surgeon. Dr. Oury was on the search committee formed for that purpose. The search committee adopted certain criteria for the ideal candidate, which included a high volume of off-pump cases and minimally invasive procedures. Docket 134 at 4. In February of 2009, Regional Hospital hired Dr. James Takara as a cardiovascular surgeon. Regional Hospital stated that Dr. Takara was hired because he best met the criteria established by the search committee. The hiring decision was made by Tim Sughrue, CEO of Regional Hospital, after consulting with the search committee. Dr. Takara was also named medical director of cardiovascular surgery.

Regional Hospital claims that it had the capacity for only two cardiac surgeons, and that it had to choose between Dr. Oury and Dr. Orecchia for the second position. Following negotiations between Dr. Oury and the hospital in April of 2009, Sughrue informed Dr. Oury that the hospital would not extend him an offer of employment. Sughrue said that Dr. Oury was not hired because

he did not produce sufficient revenue to offset his expenses. Regional Hospital said it hired Dr. Orecchia instead of Dr. Oury because even though Dr. Orecchia's heart surgery volume had also decreased, Dr. Orecchia was still profitable because he could perform vascular procedures as well.

Dr. Oury filed a charge of discrimination against Regional Hospital with the Equal Employment Opportunity Commission. He obtained a right to sue letter dated June 30, 2009, against Regional Hospital. Docket 36 ¶ 6.

On July 8, 2009, Dr. Oury filed this action against Regional Hospital, the Heart Doctors, Regional Physicians, and Regional Health Network, Inc. The court dismissed with prejudice Regional Health Network, Inc., as a party to this lawsuit on March 6, 2012. Docket 160. The amended complaint alleges claims against the remaining defendants as follows:  an ADEA claim against Regional Hospital and Regional Physicians; a defamation claim against all three defendants; a tortious interference with business relationship claim against the Heart Doctors; a violation, misuse and/or abuse of South Dakota Peer Review Statute claim against all three defendants; and a breach of contract claim against Regional Hospital and Regional Physicians.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

     Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**DISCUSSION**

I. **Age Discrimination**

Dr. Oury alleges that Regional Hospital discriminated against him based on his age when it did not to hire him and instead hired two younger individuals. Regional Hospital argues that its decision not to hire Dr. Oury was based on purely financial reasons. One candidate, Dr. Takara, possessed skills that Dr. Oury did not have and the other candidate, Dr. Orecchia, had a more financially successful surgical practice than Dr. Oury did in a similar environment. For these reasons, Regional Hospital claims that Dr. Oury cannot carry his burden of proving that Regional Hospital's reasons for not hiring him were false or pretextual to cover its discriminatory animus.

"The ADEA prohibits a covered employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age." *Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 852 (8th Cir. 2005) (citing 29 U.S.C. §§ 623(a)(1) and 631(a)). The Supreme Court has stated that a plaintiff in an age discrimination action always carries the burden of showing that he or she was terminated or would have been hired "but for" his or her age. *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Because Dr. Oury has not brought forth

direct evidence[6] of discrimination based on his age, his claims are subject to the familiar burden-shifting test expressed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

First, Dr. Oury must establish a prima facie case of age discrimination by proving the following four elements: "(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Once the plaintiff satisfies the prima facie showing, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf*, 642 F.3d at 637 (citing *Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007)). Once the employer makes that showing, then the employee "must show that the employer's proffered reason was pretext for discrimination." *Id.* "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." *Sprenger v.*

---

[6] Dr. Oury claims that his evidence is direct evidence of age discrimination, but the evidence proffered by Dr. Oury is more properly considered as indirect evidence; thus, the case is considered under the burden-shifting framework of *McDonnell Douglas*.

12

*Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (citation omitted).

Regional Hospital does not dispute that Dr. Oury met his prima facie case because he is over 40, he is a licensed cardiovascular surgeon (thus qualified for the job), the hospital did not hire him, and it did hire two younger people to fill the vacant positions. Docket 133 at 31. Because it is undisputed that Dr. Oury can satisfy a prima facie case of age discrimination, the burden shifts back to Regional Hospital to establish a legitimate, nondiscriminatory reason for choosing not to hire Dr. Oury.

Regional Hospital has brought forth consistent explanations as to why it hired Dr. Takara and Dr. Orecchia rather than Dr. Oury. Regional Hospital's legitimate reason for hiring Dr. Takara was that it was looking for a unique cardiovascular surgeon with his specific skill set. Regional Hospital wanted to employ a surgeon who had substantial experience with off-pump procedures and minimally invasive surgical skills. Dr. Takara was hired because he met the criteria that was established by the cardiologists on the search committee. Docket 133 at 33. It is uncontested that Dr. Oury did not fit the criteria for the position filled by Dr. Takara because, admittedly, Dr. Oury does not have experience with minimally invasive surgery or off-pump procedures.

All parties acknowledge and admit that Regional Hospital could only support and afford two heart surgeons, and the remaining slot was to be filled

13

by either Dr. Oury or Dr. Orecchia. The hospital states that it hired Dr. Orecchia because his practice remained profitable[7] even when many heart surgery cases were going out of town. Docket 133 at 33. Regional Hospital stated that it did not hire Dr. Oury because his volumes were low, he was overdrawn on his salary, and his practice was not financially profitable.[8] Tim Sughrue, the CEO of Regional Hospital, made the hiring decision and requested financial information about Dr. Oury's practice prior to making his determination. Sughrue saw that Dr. Oury's volumes were low and his practice "wasn't a solid financial picture." Docket 133 at 24. Thus, Regional Hospital stated a legitimate, nondiscriminatory reason for not hiring Dr. Oury, and the burden shifts back to him to show that these reasons are pretextual and his age was the "but for" reason he was not hired.

The burden is now on Dr. Oury to bring forth evidence that when considered in its entirety creates a genuine dispute of material fact as to whether the hospital's proffered reasons are pretext and "create[ ] a reasonable

---

[7] Regional Hospital noted that Dr. Orecchia was a high volume surgeon even as heart cases were diminishing because he continued to perform vascular procedures. Docket 133 at 25.

[8] Dr. Oury admitted that his volume of cases began declining in 2007 and continued through 2009. Docket 135-8 at 12. Dr. Oury also acknowledged that he collected more salary than the revenue that he produced in the years of 2007, 2008, and most of 2009, which meant he was overdrawn on his salary. Dr. Oury admits that he was overdrawn and not profitable in those years. Docket 135-8 at 12.

inference that age was a determinative factor in the adverse employment decision." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011) (citing *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)). Dr. Oury must now establish that "the employer's stated reason was false and that age discrimination was the real reason." *Tusing*, 639 F.3d at 516 (citations omitted). Dr. Oury may use statistical or circumstantial evidence to show that Regional Hospital's reasons for termination were pretextual. *Rahlf*, 642 F.3d at 637. Dr. Oury at all times carries the burden of establishing that age was the "but for" reason for his termination. *Gross*, 557 U.S. at 177-78.

Dr. Oury does not dispute the evidence that both Dr. Takara and Dr. Orecchia were qualified to be hired. Dr. Oury admits that Dr. Takara, in particular, has a distinct skill set that Dr. Oury does not possess.[9] Dr. Oury also acknowledged that he knew that Regional Hospital was looking for a cardiac surgery candidate who had the newer skills Dr. Oury did not have. Dr. Oury claims, however, that there is evidence of pretext because "[the hospital] began advertising on the Internet for a newer, younger surgeon with

---

[9] Dr. Oury stated that "whenever the discussion came up regarding a new surgeon, the inference was somebody new, younger, with new skills to bring to the program." Docket 135-8 at 19. Dr. Oury admitted that off-pump skills would be the sort of "new skills" that were discussed–the exact area that Dr. Takara specialized in. Dr. Oury admitted that no one ever told him that they thought he was too old to do his job with Regional Physicians or the job he negotiated for at Regional Hospital. Docket 135-8 at 19.

unique skills who would eventually become director." Docket 135-8 at 16. Dr. Oury pointed to evidence of how he was being treated by his co-workers or superiors to show that not being hired was based on an age-related animus. Dr. Oury also said that the Heart Doctors did not like him and attempted to get him fired.

This is not enough to prevent summary judgment because the ADEA does "not prohibit employment decisions based upon poor job performance, erroneous evaluations, *personal conflicts* between employees, or even unsound business practices." *Haigh v. Gelita USA*, Inc., 632 F.3d 464, 471 (8th Cir. 2011) (emphasis added) (quoting *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997)). More importantly, none of Dr. Oury's arguments establish that Regional Hospital's reasons for not hiring Dr. Oury were false or pretextual.

Additionally, even if there was evidence that the Heart Doctors made disparaging remarks about Dr. Oury's age or competency to perform surgery, that does not affect this court's analysis because the Heart Doctors did not make the hiring decisions for Regional Hospital.[10] Dr. Oury has brought forth

---

[10] Dr. Oury states that evidence of pretext is established by statements from the Heart Doctors that Dr. Oury was a cripple or disabled, that it discussed when Dr. Oury would retire, or that the Heart Doctors wanted a "young hotshot right out of residency." Docket 164 at 36. None of these comments bear on whether *Regional Hospital* had a discriminatory animus that was the "but for" reason for not hiring Dr. Oury because the Heart Doctors did not make hiring decisions for Regional Hospital. The Eighth Circuit Court of Appeals has noted that "stray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not

16

no evidence that any supervisor or decision-maker for Regional Hospital made any comments or remarks that related to his age. There is no evidence to rebut Sughrue's assertion that Dr. Oury was not hired because he did not have the same skill set as Dr. Takara or that he did not have the revenue or practical success in his practice as did Dr. Orecchia. Moreover, the employment decisions made by employers like Regional Hospital are precisely the type of business judgment that courts hesitate to question. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (stating that courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.") (quotations and citations omitted).

In sum, Dr. Oury has brought forth no evidence to show that Regional Hospital's explanation for why it chose not to hire him was false, and that failure is fatal to his age discrimination claim. *See Tusing*, 639 F.3d at 515 (noting that "proof that the [employer's] explanation is false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA."). Because Dr. Oury did not bring forth sufficient evidence to raise a genuine issue of fact for trial on whether Regional Hospital's stated reasons were false or that his

---

constitute direct evidence [of age discrimination]." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) (quotations and citations omitted).

age was the real reason he was not hired—his claim fails. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791 (8th Cir. 2011) (stating that the nonmovant must "set forth specific facts sufficient to raise a genuine issue for trial.") (quoting *Wingate*, 528 F.3d at 1078-79); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

As a result, Regional Hospital is entitled to summary judgment in its favor on the ADEA claim. And Regional Physicians is entitled to summary judgment in its favor on the ADEA claim because Dr. Oury did not resist Regional Physicians' motion for summary judgment.

## II.     Dismissal of State-Law Claims Without Prejudice

Having concluded that Regional Hospital and Regional Physicians are entitled to summary judgment in their favor regarding the ADEA claim, the court's original jurisdiction has been extinguished. Regional Physicians asks the court not to exercise supplemental jurisdiction over the state-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), the court may decline jurisdiction over a supplemental claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" " '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise

jurisdiction over the remaining state-law claims.' " *Johnson v. City of Shorewood, Minn.,* 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). *See also Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 1003 (8th Cir. 2011) (stating that when a court grants summary judgment on federal claims, state-law claims should be dismissed without "prejudice to avoid needless decisions of state law."). Based on § 1367(c) and *Johnson*, the court declines to exercise supplemental jurisdiction over Dr. Oury's state-law claims and dismisses Counts 2-5 without prejudice.

## CONCLUSION

Because Dr. Oury could not show that Regional Hospital's stated reasons for not hiring him were false or pretextual, Regional Hospital is entitled to summary judgment in its favor. Additionally, because Dr. Oury did not resist Regional Physicians' motion for summary judgment, Regional Physicians is entitled to summary judgment in its favor. All other claims against all defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, it is

ORDERED that Regional Hospital's motion for summary judgment (Docket 132) is granted in part and denied in part as moot. The motion is granted as to Count 1–Age Discrimination.

IT IS FURTHER ORDERED that Regional Physicians' motion for summary judgment (Docket 129) is granted in part and denied in part as moot. The motion is granted as to Count 1-Age Discrimination.

IT IS FURTHER ORDERED that the Heart Doctors' motion for summary judgment (Docket 112) is denied as moot.

IT IS FURTHER ORDERED that Dr. Oury's motion for partial summary judgment on Count 5 of the amended complaint (Docket 108) is denied as moot.

IT IS FURTHER ORDERED that the Heart Doctors' motion in limine to exclude the testimony of Dr. Huntoon (Docket 119) is denied as moot.

IT IS FURTHER ORDERED that Counts 2-5 of the amended complaint are dismissed without prejudice.

Dated September 24, 2012.

                         BY THE COURT:

                         /s/ *Karen E. Schreier*
                         KAREN E. SCHREIER
                         CHIEF JUDGE